1  STEPHANIE HINDS (CABN 154284)
   United States Attorney
2  SARA WINSLOW (DCBN 457643)
   Chief, Civil Division
3  PAMELA T. JOHANN (CABN 145558)
   Assistant United States Attorney
4
       450 Golden Gate Avenue, Box 36055
5      San Francisco, California 94102-3495
       Telephone: (415) 436-7025
6      FAX: (415) 436-6748
       pamela.johann@usdoj.gov
7
   Attorneys for Defendant PETE BUTTIGIEG
8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                 SAN FRANCISCO DIVISION

12

13  CHERYL YOUNG,                          )  Case No. 19-cv-01411-JCS-DMR
                                           )
14          Plaintiff,                     )  **DEFENDANT'S NOTICE OF MOTION AND**
                                           )  **MOTION TO DISMISS OR FOR SUMMARY**
15      v.                                 )  **JUDGMENT**
                                           )
16  PETE BUTTIGIEG,                        )  Date:    October 22, 2021
                                           )  Time:    9:30 a.m.
17          Defendant.                     )  Place:   Zoom Webinar
                                           )
18  _____)  The Honorable Joseph C. Spero

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ................................................................................................ ii

3  NOTICE OF MOTION AND MOTION ............................................................................... 1

4  RELIEF REQUESTED .......................................................................................................... 1

5  MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

6  I.  INTRODUCTION ....................................................................................................... 1

7  II.  ISSUES TO BE DECIDED ......................................................................................... 2

8  III.  BACKGROUND .......................................................................................................... 2

9       A.  Administrative Proceedings .............................................................................. 2

10       B.  Federal Court Proceedings ................................................................................ 4

11  IV.  LEGAL STANDARD ................................................................................................... 5

12  V.  ARGUMENT ............................................................................................................... 6

13       A.  Plaintiff Is Not Entitled To *De Novo* Review. ................................................ 6

14           1.  Plaintiff's Action Was Not Brought Within 90 Days Of The Final
    Action Taken By The EEOC On An Appeal. .................................... 6

15
16           2.  Plaintiff Does Not Meet The Requirements For *De Novo* Proceedings
    Under Section 1614.503(g). ............................................................. 11

17       B.  In The Alternative, Plaintiff May Not Pursue *De Novo* Proceedings Unless
    She Disgorges The Monetary Benefits She Received As A Result Of The
18           Administrative Judgment. ................................................................................. 14

19  CONCLUSION ..................................................................................................................... 20

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Adcock v. Roche*, No. 04-cv-208-DF, 2006 WL 1285045 (M.D. Ga. May 5, 2006) ............................. 8, 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 7, 5, 6

*Bedynek Stumm v. Wilkie*, No. 12-cv-057-WMC, 2021 WL 65447 (W.D. Wis. Jan. 7, 2021) ........... 7, 11

*Carver v. Holder*, 606 F.3d 690 (9th. Cir. 2010) ................................................................ 10, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 7, 6

*Charles v. McHugh*, 613 F. App'x 330 (5th Cir. 2015) ........................................................... 8

*Clegg v. West*, No. 97-cv-986, 1997 WL 1168697 (E.D. Va. Oct. 20, 1997) ............................... 15

*DesRoches v. Potter*, No. 05-cv-88-PB, 2006 WL 1644542 (D.N.H. June 12, 2006) ...................... 11

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) ....................................................... 18

*Harley v. Chao,* No. 07-cv-1881-RWS,
 2008 WL 11407328 (N.D. Ga. Jan. 24, 2008) .............................................................. *passim*

*Jones v. Sec'y, Dep't of Defense*, 730 F. App'x 885 (11th Cir. 2018) .......................................... 17

*Kloock v. Potter*, No. 04-cv-73610, 2005 WL 1593448 (E.D. Mich. July 6, 2005) ...................... *passim*

*Laber v. Geren*, 316 F. App'x 266 (4th Cir. 2009) .............................................................. 7, 11

*Laber v. Harvey*, 438 F.3d 404 (5th Cir. 2006) .................................................................... 11

*Massingill v. Nicholson*, 496 F.3d 382 (5th Cir. 2007) .......................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 7, 6

*Mayfield v. U.S. Dep't of Vet. Affairs,* No. 05-cv-2598,
 2007 WL 625827 (E.D. La. Feb. 27, 2007) .................................................................. 15

*Menard v. Nicholson*, No. 05-cv-1449, 2007 WL 9778142 (E.D. La. Sept. 13, 2007) ..................... 16

*Pamplin v. Potter*, No. 05-73620, 2006 WL 1284915 (E.D. Mich. May 10, 2006) ........................ 15

*Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005) ................................................. 6

*Scott v. Johanns*, 409 F.3d 466 (D.C. Cir. 2005) .................................................................. 10

*Simpkins v. Runyon*, 5 F. Supp. 2d 1347 (N.D. Ga. 1998) .................................................... 14-15

*St. John v. Potter*, 299 F. Supp. 2d 125 (E.D.N.Y. 2004) ....................................................... 15

*Stumm v. Wilkie*, 96 F. App'x 292 (7th Cir. 2019) ........................................................... 7, 10, 11

*Thompson v. Donahoe*, No. 10-cv-2165-TJW, 2013 WL 144271 (S.D. Cal. Jan. 9, 2013) .............. 15, 19

*Vandesande v. Potter*, No. 08-cv-60689, 2009 WL 10699891 (S.D. Fla. Feb. 19, 2009) ............... *passim*

*West v. Gibson*, 527 U.S. 212 (1999) ................................................................................................. 19

*Young v. Chao*, 816 F. App'x 154 (2020) ............................................................................. 5, 10, 13

**Statutes**

42 U.S.C. § 2000e-16 .......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................... 7, 6

**Regulations**

29 C.F.R. § 1614.119 ...................................................................................................................... 9

29 C.F.R. § 1614.401 ...................................................................................................................... 9

29 C.F.R. § 1614.401(a) ................................................................................................................. 9

29 C.F.R. § 1614.401(b) ................................................................................................................. 9

29 C.F.R. § 1614.407(c) ............................................................................................. 2, 6, 7, 8, 14

29 C.F.R. § 1614.503 ...................................................................................................................... 6

29 C.F.R. § 1614.503(a) ............................................................................................................ 9, 12

29 C.F.R. § 1614.503(b) ............................................................................................................... 12

29 C.F.R. § 1614.503(c) ................................................................................................................. 9

29 C.F.R. § 1614.503(d) ............................................................................................................... 12

29 C.F.R. § 1614.503(e) ............................................................................................................... 12

29 C.F.R. § 1614.503(f) ................................................................................................................ 12

29 C.F.R. § 1614.503(g) ............................................................................................ 2, 6, 8, 11, 12

**Other**

Black's Law Dictionary (11th ed. 2019) ................................................................................... 18

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 22, 2021, at 9:30 .m., or as soon thereafter as the matter may be heard, in Courtroom F, 15th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, or via Zoom Webinar, Webinar ID 161 926 0804, Password 050855, before the Honorable Joseph C. Spero, Defendant Pete Buttigieg, Secretary of the Department of Transportation, will and hereby does move for an order granting summary judgment in favor of Defendant.  This motion is based on this Notice; the Memorandum of Points and Authorities and Declaration of Paul Sanchez submitted herewith; the pleadings, records, and files in this case; other matters of which the Court takes judicial notice; and such other written or oral argument as may be presented at or before the time the Court takes this motion under submission.

**RELIEF REQUESTED**

Defendant requests that the Court grant summary judgment in favor of Defendant.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Seven years ago, an Administrative Judge ("AJ") ruled in favor of Plaintiff Cheryl Young on her discrimination complaint against the Department of Transportation ("DOT").  That decision became the final decision of the Equal Employment Opportunity Commission ("EEOC") in February 2016 following an appeal, and Plaintiff chose not to challenge the administrative disposition of her discrimination complaint, instead accepting over $195,000 in compensatory and back pay damages and over $196,000 in attorney's fees and costs over the course of the next three years as DOT implemented the remedial order.  She was not happy with the reinstatement position offered by DOT in 2017, however, and in 2018 filed a petition for enforcement with the Office of Federal Operations ("OFO") of the EEOC, arguing that this offer fell short of DOT's reinstatement obligations.  After the OFO decided otherwise, Plaintiff filed suit to challenge that ruling in federal court.  Because Plaintiff cannot, under Ninth Circuit law, bring a lawsuit seeking only additional relief, she is now bringing a *de novo* action—nearly five years after she accepted the EEOC's final disposition of her administrative complaint.  The statutory and regulatory framework governing her claims, however, do not allow for *de novo* review at

this late stage.  The 90-day statutory right-to-sue period is measured from the date of the EEOC's final resolution of the discrimination complaint upon an appeal, which in this case was in February 2016, and is not reset every time the OFO issues a subsequent decision on a petition for enforcement or clarification.  The courtroom door is not held open for a plaintiff who accepts the EEOC's disposition and then, years later, has a change of heart.

Plaintiff's *de novo* litigation, moreover, erases the entirety of the administrative adjudication, including the damages and attorney's fees that she was awarded, and puts the underlying liability determination at risk.  In order to proceed *de novo*, Plaintiff must disavow all legal aspects of the prior administrative proceedings, including her right to retain any administrative remedial award.  To the extent Plaintiff's *de novo* action would otherwise be permitted to proceed, therefore, summary judgment should be entered in Defendant's favor unless Plaintiff disgorges the remedial award that she received at the administrative level.

## II.   ISSUES TO BE DECIDED

1.   Whether Plaintiff's *de novo* action is time-barred under 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407(c);

2.   Whether Plaintiff meets the criteria to bring a *de novo* action under 29 C.F.R. § 1614.503(g);

3.   Whether Plaintiff's is barred from pursuing her *de novo* action unless she disgorges the monetary benefits that she received from DOT as a result of the administrative disposition of her discrimination complaint.

## III.   BACKGROUND

### A.   Administrative Proceedings

Plaintiff had been working at the Bureau of Transportation Statistics ("BTS") within the Department of Transportation for seven years as an IT Specialist when she was reassigned in September 2008 from the Office of Airline Information ("OAI"), one of the component offices within BTS, to Geospatial Information Systems ("GIS"), another BTS component office.  Declaration of Paul Sanchez ("Sanchez Decl.") ¶¶ 3-4; Second Amended Complaint ("SAC" ¶¶ 3, 6).  Her title remained IT Specialist, and the terms and conditions of her employment, including her pay, benefits, and GS level remained the

same, but shortly after the transfer, she initiated the Equal Employment Opportunity ("EEO') process, alleging that she was subjected to disparate treatment and a hostile work environment on the basis of her race and age. Sanchez Decl. ¶¶ 4-5. An Administrative Judge ("AJ") ruled in favor of Plaintiff in February 2014, awarded compensatory damages of $60,000 and attorney's fees and costs totaling $124,708.04, and ordered DOT to restore Plaintiff to her former position or the organizational equivalent. *Id.* ¶ 6. DOT filed an appeal of the AJ's decision to the OFO, which upheld the AJ's finding of discrimination and remedial award in a decision issued on September 16, 2015. *Id.* ¶ 7 & Ex. A. On February 23, 2016, the OFO denied DOT's Request for Reconsideration ("2016 EEOC Decision"). *Id.* ¶ 8 & Ex. B. The 2016 EEOC Decision indicated it was the final decision of the EEOC and that there was "no further right of administrative appeal from the Commission's decision." *Id.* Ex. B at 5. It further notified Plaintiff that she had the right to file a civil action in federal district court "within ninety (90) calendar days from the date that you receive this decision." *Id.* That 90-day right-to-sue period expired on May 31, 2016. Plaintiff did not file a civil action within that period.

DOT paid Plaintiff $60,000 in compensatory damages on March 28, 2016. It also made attorney's fees payments totaling $170,597.04 in March and April of 2016. Sanchez Decl. ¶ 10. To comply with the EEOC's reinstatement order, DOT also prepared a job offer in March 2016 for Plaintiff to return to OAI as an IT Specialist (System Analyst), GS-15, Step 9. Sanchez Decl. ¶ 12. By that point, however, Plaintiff had retired; after the AJ's decision and while DOT's appeal was pending, Plaintiff received an offer of voluntary early retirement under the Voluntary Separation Incentive Payments ("VSIP") program. *Id.* ¶ 11. Plaintiff accepted the offer in March 2015, affirmed that her resignation was voluntary, and collected a $25,000 incentive payment. *Id.* ¶ 11 & Ex. C at 3. Nevertheless, following the 2016 EEOC Decision, Plaintiff accepted the job offer that DOT made to in March 2016 in compliance with the EEOC's reinstatement order, even though she had voluntarily retired the previous year. *Id.* ¶ 12. DOT consulted with the Office of Personnel Management regarding how to process this reinstatement. DOT determined that it could not simply reinstate Plaintiff as of the date the offer was accepted but would have to reinstate her retroactive to her voluntary retirement. *Id.* ¶ 13. DOT therefore filed a petition for clarification on April 12, 2016 to determine whether the OFO's final order required DOT to restore Plaintiff to her prior position in light of her intervening voluntary retirement. Sanchez Decl. ¶ 13 & Ex. C. On February 1, 2017, the OFO issued a

1   decision ("2017 OFO Decision") on DOT's petition for clarification, confirming that the reinstatement order

2   remained in effect notwithstanding Plaintiff's voluntary retirement, ordering DOT to restore Plaintiff to her

3   former or an equivalent position, and clarifying that Plaintiff was entitled to back pay through the effective

4   date of her reinstatement with DOT or her refusal of an offer of reinstatement.  *Id.* ¶ 14 & Ex. D.

5       DOT made a net back pay payment to Plaintiff of $124,868.94 on May 2, 2017, following the 2017

6   OFO Decision.  *Id.* ¶ 15.  On March 3, 2017, DOT offered Plaintiff the position of TranStats Manager, IT

7   Specialist (System Analyst), GS-15, step 10.  *Id*. ¶ 16.  Plaintiff sought to clarify the specific duties of the

8   position but was dissatisfied with the position as described by DOT, and on March 17, 2017, notified DOT

9   that she was unwilling to accept the position as offered.  *Id.*  The parties continued to discuss the

10  reinstatement offer but were unable to reach an agreement.  *Id.*  In April 2018, Plaintiff submitted a petition

11  for enforcement to the OFO, arguing that the position offered by DOT was not comparable to her previous

12  position.  *Id.* ¶ 17.  The OFO disagreed, ruling on November 30, 2018, that the IT Specialist position offered

13  in March 2017 was an equivalent position and that DOT had complied with the reinstatement order.  *Id.* ¶ 17

14  & Ex. E.  The OFO also found that Plaintiff was entitled to 16 additional days of back pay but that her

15  eligibility for back pay ended on March 17, 2017, the day that Plaintiff effectively rejected the reinstatement

16  offer.  *Id.* Ex. E at 9.  The November 30, 2018 decision mistakenly informed Plaintiff that she was entitled to

17  seek reconsideration of that decision; OFO issued an Errata on December 14, 2018 ("2018 OFO Decision"),

18  which attached a corrected copy of the decision but did alter its substantive content.  *Id.* Ex. E at 1.

19      DOT paid Plaintiff $10,697.31 in back pay on February 15, 2019.  Sanchez Decl. ¶ 19.  It also made

20  an additional attorney's fees payment of $12,784 in March 2019.  *Id*.  On February 19, 2019, DOT

21  submitted documentation to the OFO confirming its compliance with the ordered corrective action.  *Id.* ¶ 20.

22  The OFO issued a letter to Plaintiff on April 5, 2019, indicating that DOT had complied with all required

23  actions and that the OFO's compliance monitoring had ceased.  *Id*. ¶ 20 & Ex. F.  Altogether, over the course

24  of the three years that DOT implemented the correction actions ordered by the EEOC, DOT made payments

25  totaling $391,743.94 to Plaintiff and her attorney.  Neither Plaintiff nor her attorney has returned or offered

26  to return any of these payments to DOT at any point to date.  *Id.* ¶ 21.

27      **B.   Federal Court Proceedings**

28      On March 18, 2019, 94 days after the OFO issued the 2018 OFO Decision, Plaintiff filed suit in

federal court. Dkt. No. 1. In her initial complaint, styled as an enforcement action, Plaintiff challenged only the 2018 OFO Decision on her final petition for enforcement, alleging that the OFO erred when it determined that DOT offered her an equivalent position in March 2017. Judge Laporte granted Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction because the EEOC had determined that DOT was in full compliance with its remedial orders. Dkt. No. 31. The Ninth Circuit affirmed this ruling on appeal. *Young v. Chao*, 816 F. App'x 154 (2020). The Ninth Circuit disagreed with Judge Laporte's alternative finding that a *de novo* action was untimely because it was not brought within 90 days of the OFO's November 30, 2018 Order, finding that the OFO's December 14, 2019 Errata, rather than the OFO's original decision, was the operative decision on Plaintiff's petition for enforcement. Noting that "it is not absolutely clear that Young could not amend her complaint to allege that her action for de novo review was timely," the Ninth Circuit remanded to give Plaintiff an opportunity to amend. Because the only issue before the Court was which version of the 2018 OFO Decision was the "final decision," it did not have occasion to consider whether the 2018 OFO Decision on Plaintiff's petition for enforcement was a final decision *on an appeal* that could reset the 90-day right-to-sue period that expired after the 2016 EEOC Decision.

Plaintiff filed an amended complaint on December 7, 2020. Dkt. No. 44. Plaintiff's complaint resurrects three claims of discrimination and retaliation from her 2008 EEO complaint and adds two new claims arising after the AJ's decision. On March 16, 2021, this Court granted in part and denied in part Defendant's motion to dismiss, finding that all of Plaintiff's claims were sufficiently pleaded with the exception of her claim that she was denied certain positions in 2016 and 2017 on account of her race. Dkt. No. 56. Plaintiff declined to amend her complaint to restate that claim. At a Further Case Management Conference held on July 23, 2021, the Court established a schedule for the filing of the present motion. Dkt. No. 68.

## IV.    LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

1   party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

2   U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a

3   reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  A dispute is material

4   only if it could affect the outcome of the suit.  *See Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th

5   Cir. 2005).  The mere existence of some alleged factual dispute between the parties will not defeat an

6   otherwise properly supported motion for summary judgment.  *See Anderson*, 477 U.S. at 248.  Summary

7   judgment is appropriate if a rational trier of fact, viewing the record as a whole, could not find in favor of the

8   party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

9   (1986).

10  **V.     ARGUMENT**

11       **A.     Plaintiff Is Not Entitled To *De Novo* Review.**

12          Under Title VII, a federal employee has two independent paths to file a civil action *de novo*

13  following the administrative processing of her claim.  The first path requires a federal employee who is

14  not satisfied with the results of the administrative process following the OFO's final decision on an

15  appeal to bring a civil action "[w]ithin 90 days of receipt of notice" of a final action taken by the EEOC

16  "upon an appeal."  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(c).  The second path, set forth in the

17  regulations implementing Title VII, arises in the petition for enforcement context.  *See* 29 C.F.R.

18  § 1614.503.  Under this provision, an employee may pursue a civil enforcement action *or* a civil action

19  *de novo* in federal court *only if* the EEOC has determined that the agency is not in compliance with its

20  remedial order, or if the agency has failed to file a required compliance report.  29 C.F.R. § 1614.503(g).

21  Plaintiff's *de novo* action does not meet the requirements of either of these provisions.

22          **1.     Plaintiff's Action Was Not Brought Within 90 Days Of The Final Action
                 Taken By The EEOC On An Appeal.**

23

24          Under the first path, the 90-day period is triggered by the EEOC's "final decision on an appeal."

25  29 C.F.R. § 1614.407(c).  The relevant decision for purposes of determining timeliness under this

26  provision is the final decision of the OFO resolving the appeal, even if the OFO subsequently issues

27  additional decisions on petitions for enforcement or clarification.  *See Laber v. Geren*, 316 F. App'x

28  266, 269 (4th Cir. 2009) ("*Laber II*").  In *Laber II*, the OFO concluded in a decision that became final in

2000 after reconsideration that the Army discriminated against Laber, a civilian employee, and ordered the Army to pay back pay and benefits. Laber filed a petition for enforcement, asserting that the Army's back pay calculation was insufficient. In a subsequent decision issued in 2002, the OFO ordered the Army to redetermine its calculations, leading to an increased back pay payment. Following Laber's petition for clarification, the OFO issued a third decision affirming that the Army had fully complied with its initial decision. *Laber II*, 316 F. App'x at 268-69. Noting that Laber's lawsuit sought additional remedies and a review of the merits of the discrimination claim, the court held that the relevant decision for purposes of the 90-day clock was the OFO's original decision on the merits, not the 2002 or 2003 subsequent OFO decisions rendered during the compliance period. *Id.* at 271-72.

Other district courts[1] considering this issue have similarly held that it is the OFO's final remedial decision on the appeal that triggers the 90-day clock of 42 U.S.C. § 2000e-16(c), and that subsequent OFO decisions on petitions to enforce or to clarify the earlier decision do not reset the limitations period. *See, e.g., Bedynek Stumm v. Wilkie*, No. 12-cv-057-WMC, 2021 WL 65447, at *3 (W.D. Wis. Jan. 7, 2021), *appeal filed*, No. 21-1135 (7th Cir. Jan. 25, 2021) ("the court will join the other courts that have considered this issue to date, and hold that for a de novo action, the 'final decision' under 29 C.F.R. § 1614.407(c) is the Commission's decision on the merits of a discrimination claim and any remedial order, rather than the decision on a later-filed petition for enforcement); *Kloock v. Potter*, No. 04-cv-73610, 2005 WL 1593448, at *2 (E.D. Mich. July 6, 2005) (employee's *de novo* action untimely where it was filed more than 90 days after the EEOC's final award of damages, notwithstanding the EEOC's subsequent decision on a petition for enforcement and clarification); *Harley v. Chao*, No. 07-cv-1881-RWS-JFK, 2008 WL 11407328, at *10 (N.D. Ga. Jan. 24, 2008), *R & R adopted*, 2008 WL 11407398 (N.D. Ga. Apr. 3, 2008) (OFO's subsequent decision regarding additional attorney's fees "does not breath life into the expired statute of limitations" following the OFO's final decision on plaintiff's Title

---

[1] *Laber II* appears to be the only appellate court to have issued a citable decision on this issue to date. *See Bedynek Stumm v. Wilkie*, No. 12-cv-057-WMC, 2021 WL 65447, at *3 (W.D. Wis. Jan. 7, 2021), *appeal filed*, No. 21-1135 (7th Cir. Jan. 25, 2021); *Stumm v. Wilkie*, 796 F. App'x 292, 296 (7th Cir. 2019) (describing the issue of "whether the time to file an original federal action challenging the underlying discrimination runs anew from the Commission's final decision in an enforcement action, or whether such a claim may be filed only within 90 days of the Commission's initial remedial decision" as one of "first impression").

1  VII claims); *Vandesande v. Potter*, No. 08-cv-60689, 2009 WL 10699891, at *4 (S.D. Fla. Feb. 19, 2009)

2  (subsequent EEOC decisions will not extend the statute of limitations beyond the 90-day filing period; "[t]o

3  do so would result in the finding that any appeal at any given time could restart the filing period and

4  deny any finality to an agency's final action"); *Adcock v. Roche*, No. 04-cv-208-DF, 2006 WL 1285045,

5  at *6 (M.D. Ga. May 5, 2006) (OFO's decision on enforcement petition filed by an employee aggrieved

6  by the agency's failure to reinstate him following a remedial order is not a final decision "*on an appeal*"

7  for purposes of 29 C.F.R. § 1614.407(c).  To rule otherwise "would mean that a stale claim could be

8  revived at any time by filing a petition for enforcement, appeal a finding of compliance, and then seek

9  a *de novo* civil action," *Vandesande*, 2009 WL 10699891, at *4, a result clearly contrary to the Title VII

10  administrative exhaustion framework.

11         There was one appeal to the EEOC in this case—the appeal filed by DOT on March 19, 2014.

12  The OFO's final decision on the appeal was issued on February 23, 2016, when the OFO decided DOT's

13  request for reconsideration.  That decision informed Plaintiff that the administrative processing of her

14  claim was complete: "This decision of the Commission is final, and there is no further right of

15  administrative appeal from the Commission's decision."  Sanchez Decl. ¶ 8 & Ex. B at 4.  This decision

16  determined the merits of Plaintiff's discrimination complaint and the remedial award that was warranted,

17  and was the "the Commission's final decision on an appeal."  29 C.F.R. § 1614.407(c).  To the extent

18  that Plaintiff wanted to challenge that decision—including the merits and the relief awarded by the

19  OFO—she was required to file a *de novo* proceeding in district court within 90 days.  She did not do so

20  within that prescribed time period.  Instead, she allowed the statute of limitations to expire and

21  *embraced* the OFO's decision, filing a petition for enforcement on April 12, 2016, rather than a *de novo*

22  civil action.  By the time Plaintiff filed this lawsuit on March 18, 2019—more than three years after the

23  EEOC's final decision—the limitations period had long expired.

24         Neither of the OFO's subsequent decisions following the EEOC's "final decision on [the]

25  appeal"—on the petitions for enforcement and for clarification—reset that 90-day clock.[2]  Although

26  _____

27      [2] The fact that both the 2017 and 2018 decisions contained a boilerplate notice regarding the
right to file a civil action within 90 days is of no consequence.  *See* Sanchez Decl. Ex. D at 5, Ex. E at

28  12.  This language was not tailored to the specific procedural posture of those OFO decisions, and in
particular did not reflect the fact that the EEOC appeal had been resolved in a previous final decision.
This boilerplate language did not abrogate the timeliness rules otherwise established by regulation and

these were decisions of the OFO, they were not final decisions "on an appeal" as understood by Section 1614.407(c).  Appeals to the Commission are described in 29 C.F.R. § 1614.401.  Where a plaintiff remains aggrieved following the agency's initial processing of her administrative discrimination complaint, or where, as here, an agency wishes to challenge the decision of an administrative judge, either party may file an appeal to the EEOC.  29 C.F.R. § 1614.401(a) ("A complainant may appeal an agency's final action or dismissal of a complaint"); 29 C.F.R. § 1614.401(b) ("An agency may appeal as provided in § 1614.110(a)); 29 C.F.R. § 1614.119.  The OFO's 2018 Decision in this case did not decide an *appeal* under Section 1614.401 but a *petition for enforcement* under Section 1614.503(c), the regulation governing enforcement of final Commission decisions.  29 C.F.R. § 1614.503(a) ("A complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction.").  *See Adcock*, 2006 WL 1285045, at *6 ("The EEOC's compliance determination, rendered not on an appeal from the Air Force's final action but rather upon consideration of Adcock's petition for enforcement, cannot fairly be considered a final decision "*on an appeal.*").  Nor did any issues on the appeal remain to be decided.  With the 2016 EEOC Decision, the administrative resolution of the merits of the discrimination complaint and the appropriate remedial relief were both final and not subject to change.  The OFO was authorized to enforce or to clarify its 2016 final decision but could not "change the result" or "enlarge or diminish the relief ordered."  29 C.F.R. § 1614.503(c); *see Kloock*, 2005 WL 1593448, at *2.  To allow a plaintiff to reset the 90-day clock for filing a *de novo* action simply by filing an enforcement petition (and thereby prompting a supplemental OFO decision) would circumvent the otherwise strictly enforced time limitations for filing an action in district court and would abrogate the established framework for judicial review in Title VII cases.  *See Harley*, 2008 WL 11407328, at *9.  That framework gives an employee two options after exhausting administrative

---

statute.  *See Kloock*, 2005 WL 1593448, at *2 ("despite any language to the contrary in the June 16, 2004 decision, the 90 day clock did not reset when the EEOC issued its decision on Plaintiff's petition for enforcement"); *Adcock*, 2006 WL 1285045, at *6 (noting that the EEOC provided notice of a right to sue within 90 days "in the same boilerplate language" that appeared in the first decision but concluding that this language was "given in error"); *Vandesande*, 2009 WL 10699891, at *3 n.5; *cf. Charles v. McHugh*, 613 F. App'x 330, 335 (5th Cir. 2015)  (EEOC right-to-sue notice "is boilerplate language attached to every EEOC decision" that cannot authorize civil actions to which Congress has not consented).

appeals:  she may "either accept the [Commission's] disposition and its award, or file a civil action" in district court."  *Scott v. Johanns*, 409 F.3d 466, 472 (D.C. Cir. 2005); *Carver v. Holder*, 606 F.3d 690, 696 (9th. Cir. 2010).  Plaintiff is impermissibly seeking to do both.

In remanding this case "to provide Plaintiff an opportunity to amend her complaint to seek de novo review," *Young*, 816 F. App'x at 155, the Ninth Circuit did not rule that the EEOC's 2018 decision was a "final action on an appeal" under Section 1614.407(c); that issue was not presented to the Court. Rather, the timeliness argument addressed only the narrow issue of whether the 90-day period had clearly expired, assuming that it was measured from the 2018 decision, in light of the EEOC's errata that was issued two weeks after the EEOC's original decision.  If the 90-day period started on the date the errata was issued, Plaintiff's lawsuit would arguably have been filed within that deadline.  Finding that the *corrected* final decision issued on December 14, 2018 supplanted the original November 30, 2018 decision, the Ninth Circuit reversed this Court's holding that the action was clearly untimely because it was filed more than 90 days after the original 2018 decision.  Because Judge Laporte in ruling on Defendant's first motion to dismiss found that the action was untimely even with respect to the 2018 EEOC Decision, she did not consider whether that decision was the proper measure for timeliness of a *de novo* action under Section 1614.407(c), and neither was the Court of Appeals presented with that issue.  In reversing and remanding, the Ninth Circuit held only that "it is not absolutely clear that Young could not amend her complaint to allege that her action or de novo review was timely."  Given that the timeliness argument can no longer be so easily dismissed, the issue of whether the subsequent EEOC decisions started a *new* 90-day clock is now joined.

In analogous circumstances, the Seventh Circuit in *Stumm v.Wilkie*, 796 F. App'x 292 (7th Cir. 2019), held that the issue of timeliness would need to be addressed on remand after it reversed the district court's dismissal on other grounds of a plaintiff's *de novo* age discrimination action filed long after the EEOC's final decision on an appeal but within 90 days of a decision on a petition for enforcement.  In *Stumm*, the district court initially dismissed the age discrimination claim for failure adequately to plead the claim but did not address whether the complaint was untimely because that issue was not raised by the defendant.  On appeal the Seventh Circuit also did not consider whether the action was time barred but noted that if the defendant raised that defense on remand, the district court would

1    need to decide "whether the time to file an original federal action challenging the underlying

2    discrimination runs anew from the Commission's final decision in an enforcement action, or whether

3    such a claim may be filed only within 90 days of the Commission's initial remedial decision." *Stumm*,

4    796 F. App'x at 296.  On remand, the district court deemed the *de novo* action untimely.  *Bedynek*

5    *Stumm*, 2021 WL 65447, at \*3.  In *Laber II*, the district court similarly ruled that the plaintiff's *de novo*

6    action was untimely after the Fifth Circuit initially remanded, as the Ninth Circuit did here, to permit the

7    plaintiff to plead a claim for *de novo* review after finding that his claim seeking additional relief only

8    was not permitted.  *Laber II*, 316 F. App'x 266.  The court found that the defendant had waived the

9    timeliness argument in the initial appeal, *Laber v. Harvey*, 438 F.3d 404, 429 n.25 (5th Cir. 2006)

10   ("*Laber I*"), but permitted the defendant to raise the issue on remand, and affirmed the district court's

11   subsequent holding that the plaintiff had failed to bring his *de novo* claim "within the requisite 90 days

12   of the OFO's 'final' decision."  *Laber II*, 316 F. App'x at 269.

13            **2.      Plaintiff Does Not Meet The Requirements For *De Novo* Proceedings Under
                        Section 1614.503(g).**
14

15            Having opted not to challenge the EEOC's final decision on appeal but to accept it, Plaintiff's

16   only path to filing a *de novo* action in federal court is through 29 C.F.R. § 1614.503(g).  This provision

17   is intended to give the claimant an option where a recalcitrant agency refuses to implement the remedies

18   ordered by the EEOC: the claimant can sue to enforce the reward, or it can "start over" in district court

19   given that the agency itself has repudiated the administrative proceedings.

20            As an exception to the finality afforded by the 90-day rule of Section 1614.407(c), a *de novo*

21   action under this alternative path is not available unless certain prerequisites are met.  In particular, such

22   an action, like a judicial enforcement action under the same provision, may be filed only after a

23   determination by the EEOC upon completion of administrative efforts that an agency is refusing to

24   comply with a remedial order.  *See DesRoches v. Potter*, No. 05-cv-88-PB, 2006 WL 1644542, at \*4

25   (D.N.H. June 12, 2006) ("§ 1614.503(g) plainly applies only if the EEOC has determined that an agency

26   has refused to comply with a prior EEOC decision").  The regulatory scheme requires that the

27   complainant first petition the EEOC, through the OFO, for enforcement of the decision.  29 C.F.R.

28   § 1614.503(a).  If the OFO determines that the agency is not in compliance, "efforts shall be undertaken

1   to obtain compliance," 29 C.F.R. § 1614.503(b), and if unable to secure satisfactory compliance with the

2   final decision, the OFO must refer the matter back to the EEOC.  29 C.F.R. § 1614.503(d).  Once a case

3   is returned to the EEOC for non-compliance with a final decision, the EEOC can (1) direct the head of

4   the agency to explain the alleged non-compliance in person or in writing, 29 C.F.R. § 1614.503(e), (2)

5   refer the matter to the Office of Special Counsel for an enforcement action, 29 C.F.R. § 1614.503(f), or

6   (3) notify the complainant of the right to seek a remedy in federal court. 29 C.F.R. § 1614.503(g).  The

7   relevant regulation, 29 C.F.R. § 1614.503(g), provides:

8          **(g) *Notification to complainant of completion of administrative efforts.*** Where the
    Commission has determined that an agency is not complying with a prior decision, or

9   where an agency has failed or refused to submit any required report of compliance, the
    Commission shall notify the complainant of the right to file a civil action for enforcement

10   of the decision pursuant to Title VII, the ADEA, the Equal Pay Act or the Rehabilitation
    Act and to seek judicial review of the agency's refusal to implement the ordered relief

11   pursuant to the Administrative Procedure Act, 5 U.S.C. 701 *et seq.,* and the mandamus
    statute, 28 U.S.C. 1361, or to commence *de novo* proceedings pursuant to the appropriate

12   statutes.

13   Therefore, before there can be a *de novo* action in district court pursuant to this regulatory scheme, there

14   must have been a referral by the OFO to the EEOC for non-compliance and either a determination by the

15   EEOC that the agency was not in compliance with its decision, or a failure of the agency to submit a

16   "required" report of compliance.  The EEOC will then notify the complainant of the completion of

17   administrative efforts and the right to file a civil action.

18          These prerequisites were not met in this case.  First, the OFO never determined that it was unable

19   to obtain satisfactory compliance and did not refer to the matter to the EEOC.  Rather, the OFO's 2018

20   decision on Plaintiff's enforcement petition found that DOT was in compliance with its previous orders,

21   including its reinstatement order and order for back pay, benefits, and interest, with the exception of the

22   final two weeks of back pay, which the agency acknowledged that it owed and promptly paid.  Sanchez

23   Decl. ¶ 19 & Ex. E.  DOT made that payment on February 15, 2019.  Sanchez Decl. ¶ 19.  Without a

24   referral by the OFO to the EEOC following the petition for enforcement, there necessarily was no

25   finding of Agency non-compliance by the EEOC or notification to Plaintiff by the EEOC that

26   administrative efforts had ceased and she had a right to file a civil action.[3]  Moreover, there is no

27

28        [3] Any notice provided in the 2018 OFO Decision was provided by the OFO, not the EEOC after
    a referral by the OFO for non-compliance and the completion of administrative efforts.

1    indication that DOT "failed or refused to submit any required report of compliance."  To the contrary,

2    on February 19, 2019, DOT submitted documentation to the OFO documenting its full compliance.

3    Sanchez Decl. ¶ 20.  The OFO issued a letter on April 5, 2019, confirming this submission, informing

4    the parties that DOT had documented its compliance with the corrective actions ordered by the OFO,

5    and notifying Plaintiff that compliance monitoring had ceased.  *Id.* ¶ 20 & Ex. F.  Accordingly, Plaintiff

6    does not meet the criteria for triggering the right to file a civil action *de novo* under Section 1614.503(g).

7            The Ninth Circuit similarly came to this conclusion with respect to the same Section 1614.503(g)

8    criteria, as applied to Plaintiff's enforcement action.  In affirming Judge Laporte's dismissal of that

9    claim, the Ninth Circuit recognized that "Young failed to allege facts sufficient to show that the

10   Department of Transportation did not comply with the final decision and that there was a portion of the

11   final decision that remained unenforced."  *Young*, 816 F. App'x at 154.  Nor does the rationale for

12   permitting a *de novo* action outside of the 90-day limitation period following the EEOC's decision on an

13   appeal apply in this case.  This was not a situation where the agency repudiated the OFO's remedial

14   award or refused to implement it; DOT has done everything required to comply with the OFO's

15   remedial orders, as the OFO itself confirmed.  This procedural history makes clear that Plaintiff's filing

16   of this action—and her decision in January 2020 to institute *de novo* proceedings in federal court for the

17   first time—was not, as contemplated by Section 1614.503(g), because DOT had repudiated the EEOC's

18   remedial award but because Plaintiff herself had.  The catalyst for both her original "enforcement" claim

19   and her current *de novo* claim was not an EEOC finding that DOT had *not complied* with its remedial

20   order but the OFO's contrary finding—that DOT was *in compliance*.  Plaintiff's *de novo* claim thus

21   cannot proceed under the rubric of Section 1614.503(g), which is designed to redress Agency non-

22   compliance.  This provision is not intended to allow a second bite of the *de novo* apple in the

23   circumstances presented here, where the claimant chooses not to challenge the EEOC's decision on the

24   merits, accepts the benefits of the remedial award over the course of multiple years, and then, after the

25   EEOC's decision is fully implemented, seeks to upend that finality and undo thirteen years of

26   administrative proceedings because she does not feel that the granted remedy has made her whole.  *See*

27   *Vandesande v. Potter*, No. 08-cv-60689, 2009 WL 10699891, at *4 (S.D. Fla. Feb. 19, 2009).

28           Untimely under Section 1614.407 and unable to meet the criteria for Section 1614.503(g)

judicial review, Plaintiff's *de novo* action cannot proceed, and summary judgment should be granted in Defendant's favor.  Because Plaintiff's new claims—for constructive discharge and age discrimination based on events that occurred in 2015 through 2017—piggyback on Plaintiff's right to bring a *de novo* action with respect to her earlier claims, they similarly must be dismissed as untimely; there is no independent statutory basis authorizing Plaintiff to bring a civil action raising these claims in federal court.[4]  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(c).

### B.  In The Alternative, Plaintiff May Not Pursue *De Novo* Proceedings Unless She Disgorges The Monetary Benefits She Received As A Result Of The Administrative Judgment.

To the extent Plaintiff is otherwise permitted to bring a *de novo* action in this case, she is barred from proceeding in federal court because she may not simultaneously reject the EEOC's resolution of her discrimination claims while retaining the benefits of those administrative proceedings.  As a result of the administrative proceedings and the OFO's final decision on appeal, DOT provided all of the remedies ordered by the OFO, including non-monetary corrective actions and compensatory damages, back pay, costs, and attorney's fees.  Plaintiff and her attorney accepted these payments, collecting over $391,000 since March 2016.  Of the payments issued by DOT, over $160,000 were made after the expiration of the 90-day period for Plaintiff to challenge the OFO's final decision on her appeal.  DOT made these payments and took the required actions, believing that the matter was resolved.

Plaintiff's *de novo* action nullifies the entirety of the administrative adjudication, including the damages and attorney's fees that she was awarded, and puts the underlying liability determination at issue.  "A full trial de novo of course poses risks for a plaintiff, such as the one here, who has secured relief from the agency, but not as much as he wishes. He might lose everything in such a complete new trial." *Simpkins v. Runyon*, 5 F. Supp. 2d 1347, 1349 (N.D. Ga. 1998).  Plaintiff, however, has declined to return these payments, retaining the considerable monetary relief provided from the administrative proceedings while pursuing this litigation that will determine whether she is entitled to obtain *any* relief.

---

[4] While it is Defendant's position that the consideration of these allegations by the OFO in connection with enforcement proceedings does not satisfy the administrative exhaustion requirement, Defendant acknowledges that this Court previously held that Plaintiff sufficiently alleged exhaustion with respect to her new claims because they were directly linked to the claims raised in her original administrative complaint and they in fact "fell within the scope of the EEOC's actual investigation." Dkt. No. 56 at 26-27.

While no Ninth Circuit decision has addressed the issue of whether administrative remedial relief must be disgorged by a plaintiff seeking to pursue a *de novo* action, at least one district court in this Circuit has held that disgorging or offering to return an administrative damages award is a necessary precondition to proceeding in federal court. *See Thompson v. Donahoe*, No. 10-cv-2165-TJW, 2013 WL 144271, at *4 (S.D. Cal. Jan. 9, 2013) ("a plaintiff cannot pursue a discrimination award after accepting the benefits of the OFO's remedial award"). This ruling is consistent with a string of out-of-circuit district court cases that has held that a plaintiff cannot "have his cake and eat it too, by attempting to retain those benefits he liked from [an agency] award yet still pursue additional benefits through de novo litigation." *Clegg v. West*, No. 97-cv-986, 1997 WL 1168697, at *5 (E.D. Va. Oct. 20, 1997), *aff'd*, 199 F.3d 1326 (4th Cir. 1999); *see also Harley*, 2008 WL 11407328, at **10-12 (citing cases). In *Clegg*, a decision affirmed by the Fourth Circuit, the court reasoned that "a de novo proceeding is exactly what it purports to be, and [] Plaintiff may not simultaneously accept part of the benefit of the EEOC order, that is the back pay he has received and not offered to repay and, at the same time, raise de novo his discrimination claim." *Clegg*, 1997 WL 1168697, at *5. These courts reason that it would be fundamentally unfair to allow litigants to challenge a final determination on the one hand, while on the other hand accepting monetary benefits awarded as a result of that determination. This equitable principle is derived from the federal common law rule that an agency's "expectation that the 'payment rendered in full satisfaction of a valid order of an administrative agency should not be ignored or undone,'" *Pamplin v. Potter*, No. 05-73620, 2006 WL 1284915, at *3 (E.D. Mich. May 10, 2006) (quoting *St. John v. Potter*, 299 F. Supp. 2d 125, 129 (E.D.N.Y. 2004)), and the agency, having complied with the EEOC's remedial order, "is entitled to repose." *Harley*, 2008 WL 11407328, at **12. At the same time, a plaintiff who has voluntarily accepted the benefits of the administrative award should not be permitted to relitigate those claims in federal court. *Harley*, 2008 WL 11407328, at *11. While some courts have barred a plaintiff's *de novo* action entirely, *see, e.g.*, *Mayfield v. U.S. Dep't of Veterans Affairs*, No. 05-cv-2598, 2007 WL 625827, at *3 (E.D. La. Feb. 27. 2007), others have held that a plaintiff may proceed as long as she disgorges the administrative payments. *See, e.g.*, *Menard v. Nicholson*, No. 05-cv-1449, 2007 WL 9778142, at *4 (E.D. La. Sept. 13, 2007).

The only circumstance in which this disgorgement principle has not been applied is where the complainant, instead of accepting the EEOC's final decision on an appeal, files a *de novo* action challenging

1    that decision within the initial 90-day period prescribed by 42 U.S.C. § 2000e-16(c) but after the agency

2    made payments pursuant to the administrative order.  *See Massingill v. Nicholson*, 496 F.3d 382 (5th Cir.

3    2007); *Farrar v. Nelson*, 2 F.4th 986 (D.C. Cir. 2021).  In these circumstances, the complainant is

4    manifesting an immediate rejection of the OFO's decision and following the statutory scheme to challenge

5    that decision in court at the first opportunity.  While recognizing an agency's interest in repose, the Fifth

6    Circuit in *Massingill* found that this interest was not unduly compromised where the complainant sought

7    review within the statutory time period, reasoning that "§ 2000e-16(c) gives plaintiff only ninety days after

8    the final agency disposition to sue, and it's not unreasonable to delay such repose for three months."  496

9    F.3d at 386.  The *Massingill* court contrasted these facts with a civil action following a more protracted

10   period of remediation: "This is not a situation involving the common-law defense of satisfaction of a debt,

11   settlement, or judgment from some time ago, it is [a] situation where the administrative scheme has played

12   out, the plaintiff has ninety days to sue, and she does so within that time." *Id.*   Following *Massingill*, the

13   D.C. Circuit in *Farrar* also held that disgorgement was not a statutory or regulatory precondition to filing a

14   civil action pursuant to 42 U.S.C. § 2000e-16(c), where the plaintiff opted to bring a *de novo* action in district

15   court rather than accept the EEOC's disposition of his administrative appeal.  The *Farrar* court noted that

16   Section 2000e-16(c) gives employees 90 days from the EEOC's decision to file a civil action without

17   mentioning disgorgement, and the monetary award in that case was ordered—and paid—within that 90-day

18   right-to-sue period "[k]nowing full well that Farrar might file a de novo action in district court."  *Farrar*, 2

19   F.4th at 989.  While the court held that disgorgement was not statutorily required, it left open the possibility

20   that equitable defenses might preclude the plaintiff's *de novo* action.

21        By contrast, in the circumstances presented in this case—where a plaintiff seeks to bring a delayed *de*

22   *novo* action after first accepting the administrative disposition—courts have uniformly not permitted the

23   plaintiff to proceed *de novo*, at least without first disgorging the benefits of the EEOC award.  *See*, *e.g.*,

24   *Harley*, 2008, WL 11407328, at **10-12; *Kloock*, 2005 WL 1593448, at *2; *Vandesande*, 2009 WL

25   10699891.[5]  In *Harley*, the OFO issued a final decision in January 2004 finding that the agency had

26

27        [5]In *Jones v. Sec'y, Dep't of Defense*, 730 F. App'x 885, 886 (11th Cir. 2018), the Eleventh Circuit
28   reversed the lower court's determination that the plaintiff's failure to disgorge deprived the court of
     subject matter jurisdiction; the Court held that it did not need to decide whether the disgorgement of the
     administrative award was a precondition to *de novo* trial, however, because the plaintiff "'agreed to

discriminated against Harley on the basis of his race.  Like Plaintiff here, Harley failed to file an action in federal court within the 90-day limitations period following that decision, and the court ruled that his *de novo* action was untimely.  As an alternative ground for summary judgment, the court held that Harley could not "litigate the claims asserted before the agency *de novo* in this court" because he had "accepted the benefits of the relief awarded at that administrative level."  *Harley*, 2008 WL 11407328, at *12.  The agency had provided compensatory damages, back pay, attorney's fees, and other relief pursuant to the OFO's decision, and Harley "accepted and enjoyed the benefits of the administrative award for over two years without expressing any dissatisfaction with the [OFO's] findings," *id.*, 2008 WL 11407328, at *11, before filing a *de novo* action in federal court following a subsequent OFO decision on attorney's fees.  In these circumstances, the *Harley* court held, "Defendant is entitled to repose, and Plaintiff is not entitled to retain the benefits of the 2004 judgment while seeking relief *de novo* by filing a federal complaint on the claims raised and resolved at the agency level several years ago."  *Id.*, 2008 WL 11407328, at *12.  The plaintiff in *Kloock* also sought to litigate his discrimination claims *de novo* following the OFO's decision on a petition for enforcement, and the court held that the lawsuit was untimely because it was filed more than 90 days after the OFO's final decision.  The court noted that if the lawsuit were timely filed and the plaintiff chose to relitigate his claims, "he would have to disgorge the previously awarded compensatory damages, including attorneys fees and back pay for which he has already paid federal income taxes."  2005 WL 1593448, at *2.  And in *Vandesande* the court held in analogous circumstances that "tender back would be required, if the action was not already determined to be untimely filed."  *Vandesande*, 2009 WL 10699891, at *7.

For similar reasons, having accepted the administrative disposition and the remedial award, Plaintiff should not be permitted to proceed with her *de novo* action without disgorging the payments made to her and her attorney.  First, as an equitable matter, DOT, having undertaken correction actions to comply with the EEOC's remedial order for nearly two years following the EEOC's remedial order, is entitled to repose.  Unlike *Massingill* and *Farrar*, this is not a case where an aggrieved complainant brought a *de novo* action within the 90-day right-to-sue period, when the finality of the EEOC decision was uncertain and the agency did not know whether the employee would accept the EEOC's disposition or reject it and file suit.  The

return all previously received proceeds.'"

1 situation is altogether different here, where the 90-day period expired, Plaintiff *accepted* the administrative

2 disposition, and the remedial award is clarified and implemented over a period of several years.  After the

3 expiration of the 90 day right-to-sue period, DOT reasonably expected that the administrative disposition

4 was final and could no longer be challenged *de novo*, and it was reasonable for the agency to rely on the

5 finality of this resolution in rendering the remainder of the relief.  While it might not be inequitable to delay

6 repose for 90 days during the right-to-sue period, DOT was certainly entitled to expect that the administrative

7 disposition would not be undone nearly four years later when Plaintiff filed her *de novo* claim, after DOT

8 rendered nearly $400,000 in payments and undertook all of the other required corrective actions.  To permit

9 Plaintiff to retain the benefits conferred as a result of the administrative disposition while the parties litigate,

10 years later, whether she is entitled to any benefits would compound the iniquity of these circumstances.

11        Second, permitting Plaintiff to retain the administrative award while she relitigates her claim is

12 inconsistent with the plain meaning of "*de novo*."  A "trial *de novo*" is "[a] new trial on the entire case—that

13 is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance."

14 *Trial De Novo*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see also Freeman v. DirecTV,*

15 *Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006) (defining *de novo* review as "review[ing] the matter anew, the

16 same as if it had not been heard before, and as if no decision previously had been rendered").  When Plaintiff

17 elected to pursue a *de novo* action, the legal consequences of the administrative proceedings became a

18 nullity—that is the essence of a *de novo* suit.  Such a proceeding requires that the parties be returned to the

19 same legal positions they occupied before the administrative adjudication; in other words, they must be

20 situated as if there had been no underlying administrative decision, inclusive of any remedial awards.

21 Accordingly, to properly state a *de novo* discrimination claim, Plaintiff must abandon the EEOC's

22 disposition and forswear all facets of her administrative stage success, including by returning the monetary

23 remedies that she and her attorney previously accepted.  An action where the plaintiff retains the remedies

24 that were provided *only* by reason of the earlier disposition is not truly *de novo* because a portion of the

25 previously rendered decision remains intact.

26        Third, Plaintiff's failure to disgorge administrative remedies while ostensibly proceeding *de novo*

27 undercuts the Ninth Circuit's holding in *Carver v. Holder* that an employee cannot bring a suit seeking only

28 additional relief.  *Carver*, 606 F.3d at 696.  By retaining these payments, Plaintiff is not, as she must,

1    forsaking a critical aspect of the administrative decision; instead, she is using "the OFO's award as a floor on

2    [her] damages, while then filing this lawsuit in an attempt to obtain a larger award." *Thompson*, 2013 WL

3    144271, at *4.  A plaintiff cannot pick and choose among the different components of an administrative

4    disposition, keeping those she likes while challenging those where she is not fully satisfied.  That is the

5    very kind of piecemeal approach that the Ninth Circuit rejected in *Carver*.  *See* 606 F.3d at 697 ("We do

6    not think that Carver can so selectively choose which aspect of the administrative disposition of his claim he

7    wishes to enforce").  It was on the basis of this principle that Plaintiff's original complaint in this action was

8    rejected; by amending her complaint to allege a *de novo* action in theory while not relinquishing the

9    administrative award in fact, she has not meaningfully changed her litigation posture.  This Court should not

10   countenance this end-run round the *Carver* rule.

11       Fourth, Plaintiff's retention of the administrative award in these circumstances would undermine the

12   efficacy of the federal sector administrative process.  The decision to nullify an administrative disposition

13   and start over in district court from square one, with no deference to the administrative findings, is not an

14   easy choice for a plaintiff who, after years of proceedings, secured a finding of discrimination and a

15   substantial monetary award.  She faces the possibility that she will not prevail, and risks taking nothing.

16   A plaintiff who is permitted to retain the administrative reward as a form of "interim relief" will not

17   experience the actual risk that this choice entails or be forced to weigh the implications of this decision.

18   Instead, she will have a skewed incentive to pursue additional relief in court and an artificial valuation of

19   her case.  As the Supreme Court has explained, "by creating a dispute resolution system that requires a

20   complaining party to pursue administrative relief prior to court action," Congress intended to

21   "encourag[e] quicker, less formal, and less expensive resolution of disputes within the Federal

22   Government and outside of court."  *West v. Gibson*, 527 U.S. 212 218-19 (1999).  Permitting a plaintiff

23   to proceed with a *de novo* action years later, without disgorging the benefits of the administrative

24   decision, would have the opposite effect.

25       Fifth, the prospect that Plaintiff may be required to repay some or all of the monetary award upon the

26   conclusion of the litigation should she not succeed, or if she secures a smaller judgment in federal court, does

27   not adequately protect the Government's interest.  This alternative effectively means that the Government

28   must bear all the risk of a potentially judgment-proof plaintiff.  In the event that DOT were to prevail on

1   liability or obtain a more favorable ruling on damages in the district court than it did before the EEOC, DOT

2   would be forced to take on the role of a creditor and attempt to recoup from Plaintiff and her attorney some

3   or all of the money it already paid them—certainly not the position it would be in if there had been no trial in

4   the first instance.  DOT "should not be placed in the potential position of being unable to retrieve the funds

5   from Plaintiff should [it] prevail."  *Vandesande*, 2009 WL 10699891, at *7.

6                                                        **CONCLUSION**

7            For the foregoing reasons, Defendant respectfully requests that the Court grant summary

8   judgment in his favor.

9   DATED: August 20, 2021                              Respectfully submitted,

10                                                       STEPHANIE M. HINDS
                                                         Acting United States Attorney

11
                                                               */s/ Pamela T. Johann*
12                                                          PAMELA T. JOHANN
                                                         Assistant United States Attorney
13
                                                         Attorneys for Defendant Pete Buttigieg
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28