1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    CHERYL YOUNG,                          Case No. 19-cv-01411-JCS

8                    Plaintiff,

9          v.                              **ORDER DENYING MOTION FOR
                                           SUMMARY JUDGMENT**
10   PETE BUTTIGIEG,
                                           Re: Dkt. No. 69
11                   Defendant.

12   **I.      INTRODUCTION**

13          Plaintiff Cheryl Young, pro se, seeks de novo review of discrimination and retaliation

14   claims where she prevailed on the merits in administrative proceedings but was dissatisfied with

15   position offered for reinstatement, which the Equal Employment Opportunity Commission

16   ("EEOC") ultimately held, over Young's objection, to be equivalent to her past position with the

17   U.S. Department of Transportation ("DOT").  The Court previously dismissed the case with

18   prejudice, in part based on the applicable statute of limitations, but the Ninth Circuit reversed as to

19   that issue.  Defendant Pete Buttigieg, the Secretary of Transportation (the "Secretary"), moves for

20   summary judgment or again to dismiss, arguing again that Young's claims are barred by the

21   statute of limitations, and asserting for the first time that Young cannot proceed on de novo review

22   without disgorging funds she received from the administrative ruling in her favor.  The Court held

23   a hearing on October 29, 2021 and requested supplemental briefing.  For the reasons discussed

24   below, the Secretary's motion is DENIED.[1]

25

26

27

28   _____

     [1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28
     U.S.C. § 636(c).

## II.    BACKGROUND

### A.    Procedural History

Young prevailed in administrative proceedings, where the EEOC ordered the DOT to reinstate her to an equivalent position and provide back pay.  The DOT offered her a position, but Young did not agree that it was equivalent to previous job, and she filed a petition for enforcement.  The EEOC granted that petition in part, finding some fault with the DOT's documentation and payment of back pay, but concluding that the position the DOT offered Young was sufficiently similar to her past position to be equivalent, and that Young was only entitled to back pay through March 17, 2017, when she "effectively rejected said offer."  2nd Am. Compl. ("SAC," dkt. 44) Ex. 40 at 8.  The EEOC Office of Federal Operations ("OFO") initially issued that decision on November 30, 2018, but issued an errata on December 14, 2018 to remove an erroneous reference to a right to request reconsideration.  SAC Exs. 39, 40.  Both the versions of the decision included the following paragraph:

> PETITIONER'S RIGHT TO FILE A CIVIL ACTION (R0610)
>
> This is a decision requiring the Agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or filed your appeal with the Commission. . . . Filing a civil action will terminate the administrative processing of your complaint.

SAC Ex. 39 at 11; *id.* Ex. 40 at 10.

Young filed this action pro se, seeking to enforce the EEOC's decision as she understood it, which would require either offering a different position for reinstatement or providing front pay if no such position was available.  *See* Compl. (dkt. 1).  The case was assigned to the Honorable Elizabeth Laporte.  The Secretary moved to dismiss, and the Court dismissed Young's enforcement claim with prejudice under Rule 12(b)(1) because the EEOC had determined that the Secretary complied with its decision.  *See* Order Granting Mot. to Dismiss (dkt. 31) at 6.[2]  To the

---

[2] *Young v. Chao,* No. 19-cv-01411-EDL, 2019 WL 11555250 (N.D. Cal. Aug. 27, 2019), *aff'd in part, vacated in part, remanded,* 816 F. App'x 154 (9th Cir. 2020).  Pete Buttigieg has since

United States District Court
Northern District of California

extent Young might seek de novo review, the Court dismissed such a claim as untimely:

> In the alternative, if Plaintiff had been seeking de novo review, she filed her lawsuit too late. Therefore, dismissal with prejudice is also appropriate under Rule 12(b)(6) because Plaintiff filed her Complaint outside of the 90 day statute of limitations set forth in 42 U.S.C. § 2000e-16(c).

*Id.* After Judge Laporte retired from the Court, the case was reassigned to the undersigned magistrate judge in October of 2019. *See* dkt. 34.

Young appealed, and the U.S. Court of Appeals for the Ninth Circuit affirmed the decision to dismiss the claim Young actually asserted (which sought to enforce the EEOC's final order) because the DOT had complied with that order, relying on *Carver v. Holder*, 606 F.3d 690 (9th Cir. 2010), which held that a plaintiff who prevailed on liability in administrative proceedings but was unsatisfied with the EEOC's decision on a petition for enforcement (where, as here, the EEOC concluded that the defendant agency had complied with its previous order and no further action was necessary) could not "parse his action to increase the remedy without relitigating the liability issue in pursuing his claim in federal court." *Carver*, 606 F.3d at 692; *see generally Young v. Chao*, 816 F. App'x 154 (9th Cir. 2020).[3] The Ninth Circuit reversed the denial of leave to amend, however, holding that Young should be permitted to amend her complaint to pursue de novo review of the EEOC's decision if she could allege that she received the EEOC's December 14, 2018 errata and corrected final decision within ninety days before she brought this action. *Young*, 816 F. App'x at 154–55. In reaching that conclusion, the panel relied on the fact that "the EEOC's errata, dated December 14, 2018, stated that the corrected final decision attached thereto was the EEOC's final decision." *Id.*

Young filed her first amended complaint (dkt. 41) on November 6, 2020, and by stipulation of the parties, she filed her operative second amended complaint on December 7, 2020. In it, she raises claims under Title VII and the ADEA for race and age discrimination, hostile work

---

replaced former Secretary of Transportation Elaine Chao as the defendant in this case under Rule 25(d) of the Federal Rules of Civil Procedure. Citations herein to this Court's previous orders refer to page numbers of the versions filed in the Court's ECF docket.

[3] The Ninth Circuit's decision is filed in this Court's docket as docket entry 37, and its mandate issued on October 5, 2020 is filed as docket entry 38.

United States District Court
Northern District of California

environment, and retaliation, seeking de novo review of the administrative decision.  *See generally* 2d Am. Compl. ("SAC") ¶¶ 40–94.  She seeks the following relief: (1) compensatory damages in the amount of $60,000; (2) reinstatement to the OAI IT modernization project with backpay retroactive to September 9, 2008; and (3) costs and fees.  *Id.* ¶¶ 95–97.

The Secretary moved once again to dismiss.  The Court denied that motion in large part, holding that Young could proceed on all claims except that she was denied a particular position in 2016 and 2017 on account of her race.  Order re Mot. to Dismiss SAC (dkt. 56).[4]  Ms. Young did not amend that claim, and the Secretary filed an answer to her second amended complaint.

### B.    The Parties' Arguments

The Secretary now moves for summary judgment or again to dismiss, arguing for the first time that neither the original nor corrected 2018 EEOC decision on enforcement was the appropriate starting point for the ninety-day statute of limitations for de novo review, which instead ran from the EEOC's decision on the merits in 2016.  Mot. at 6–11.  The Secretary contends that an alternative track for de novo challenges after seeking enforcement is not available here because the EEOC determined that the Department of Transportation had complied with its previous orders.  *Id.* at 11–14.  In the alternative, the Secretary argues that Ms. Young must return the funds she received from the EEOC proceedings if she wishes to seek de novo review.  *Id.* at 14–20.

Young contends that the statute of limitations for this case has already been resolved by the Ninth Circuit, the Secretary failed to raise it in previous motions to dismiss, and the Secretary's current position contradicts positions taken in the initial motion to dismiss and before the Ninth Circuit.  Opp'n (dkt. 70) at 2–5.  She also argues that the 2018 decision marked the conclusion of administrative proceedings and the start of the statute of limitations.  *Id.* at 5–9.  Young argues that she should not be required to return the funds she received from the administrative proceedings, because nothing in the statute requires such disgorgement as a precondition for suit, no resolution has yet been reached to supersede the EEOC's assessment of liability, and Young's

---

[4] *Young v. Buttigieg*, No. 19-cv-01411-JCS, 2021 WL 981305 (N.D. Cal. Mar. 16, 2021).

United States District Court
Northern District of California

1   award from the administrative proceedings can either be deducted from any judgment in her favor

2   or ordered returned at the conclusion of this case if its outcome is less favorable to her.  *Id.* at 10–

3   17.

4          The Secretary contends in his reply that the question of which EEOC order started the

5   statute of limitations was not squarely before the Ninth Circuit, has not been decided, and was not

6   required to be raised in any earlier motion.  Reply (dkt. 73) at 1–5.  He argues that judicial

7   estoppel does not apply because he did not prevail, *id.* at 5–7, and that the weight of authority

8   supports disregarding the enforcement decision for the purpose of the statute of limitations for de

9   novo review, which as a waiver of sovereign immunity must be construed strictly, *id.* at 7–13.  He

10  contends that circuit decisions declining to require disgorgement of administrative awards are

11  distinguishable and the nature of de novo review requires disgorgement here, although he

12  disclaims any argument that it is strictly required by the statute or presents a jurisdictional bar to

13  Young's claims.  *Id.* at 13–15.

14         At the Court's request, the parties submitted supplemental briefing addressing: (1) the

15  Court's authority to order funds placed in escrow and; and (2) the amount of funds Ms. Young

16  received from administrative proceedings.  *See generally* Def.'s Supp'l Br. (dkt. 76); Pl.'s Supp'l

17  Br. (dkt. 77).

18  **III.     ANALYSIS**

19         **A.     Legal Standard**

20         Summary judgment on a claim or defense is appropriate "if the movant shows that there is

21  no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

22  law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

23  the absence of a genuine issue of material fact with respect to an essential element of the non-

24  moving party's claim, or to a defense on which the non-moving party will bear the burden of

25  persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

26         Once the movant has made this showing, the burden then shifts to the party opposing

27  summary judgment to designate "'specific facts showing there is a genuine issue for trial.'"  *Id.*

28  (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

United States District Court
Northern District of California

disputed must support the assertion by . . . citing to particular parts of materials in the record

. . . .").  "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

substantive evidentiary standard of proof that would apply at the trial on the merits."  *Anderson v.*

*Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of

identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Keenan*

*v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court "'to scour the

record in search of a genuine issue of triable fact.'"  *Id.* (citation omitted); *see Carmen v. S.F.*

*Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

A party need not present evidence to support or oppose a motion for summary judgment in

a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable

to presentation in an admissible form.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.

2003).  Neither conclusory, speculative testimony in affidavits nor arguments in moving papers

are sufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co.,*

*Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  On summary judgment, the court draws all

reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378

(2007), but where a rational trier of fact could not find for the non-moving party based on the

record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate.

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

For the present motion, the parties' arguments turn primarily on issues of law, without

relying on a factual record beyond a declaration summarizing the administrative proceedings, the

contents of which are not meaningfully in dispute.

**B.   Young's Claim Is Not Untimely**

A federal employee who is unsatisfied with the outcome of administrative proceedings on

a discrimination claim may bring a civil action "[w]ithin 90 days of receipt of notice of final

action taken by a department, agency, or unit referred to in subsection (a), or by the Equal

Employment Opportunity Commission upon an appeal from a decision or order of such

department."  42 U.S.C. § 2000e-16.  Here, the Secretary does not dispute that Young filed this

action within ninety days of receiving the December 2018 corrected decision.  Instead, the

United States District Court
Northern District of California

Secretary contends that neither version of the decision on Young's petition for enforcement was the appropriate starting point for the statute of limitations, which instead began from the OFO's February 23, 2016 decision denying the DOT's request for reconsideration on the merits.  *See* Mot. at 8.

On its merits, the Secretary's position that the statute of limitations expired in 2016 has some support in caselaw.  As far as this Court is aware, every other court to consider the issue directly has held that an enforcement decision does not restart the statute of limitations, which instead begins from the EEOC's final decision on the merits.  *E.g.*, *Laber v. Geren*, 316 F. App'x 266, 270 (4th Cir. 2009); *Stumm v. Wilkie*, No. 12-cv-057-wmc, 2021 WL 65447, at *2 (W.D. Wis. Jan. 7, 2021), *aff'd on other grounds sub nom. Stumm v. McDonough*, 859 F. App'x 741 (7th Cir. 2021)[5]; *Vandesande v. Potter*, No. 08-60689-CIV, 2009 WL 10699891, at *6 (S.D. Fla. Feb. 19, 2009); *Adcock v. Roche*, No. 5:04-CV-208(DF), 2006 WL 1285045, at *6 (M.D. Ga. May 5, 2006); *Kloock v. Potter*, No. 04-73610, 2005 WL 1593448, at *2 (E.D. Mich. July 6, 2005); *Puckett v. Potter*, 342 F. Supp. 2d 1056, 1064 (M.D. Ala. 2004).  Some decisions have also accepted the Secretary's argument that boilerplate notices of appeal rights included in enforcement decisions or similar administrative orders may be disregarded.  *Vandesande*, 2009 WL 10699891, at *3 n.5; *Adcock*, 2006 WL 1285045, at *6; *Kloock*, 2005 WL 1593448, at *2.  None of those decisions are binding on this Court, however, and all of them are inconsistent with the Ninth Circuit's decision on appeal.  If the Secretary believed the Ninth Circuit decided this issue incorrectly, the Secretary could have sought rehearing or certiorari, but this Court cannot disregard the decision on appeal that the relevant question for the statute of limitations was when Young received the December 2018 corrected decision on her enforcement petition.

Even if the Court were to confront the issue anew, it is not clear that the consensus view is correct.  An order for reinstatement after success in administrative proceedings leaves open the

---

[5] The Seventh Circuit affirmed summary judgment in *Stumm* because the plaintiff failed to present coherent arguments on appeal after rejecting a court-appointed lawyer, and concluded that "[r]esolution of the timeliness question, to the extent it affects other litigants, is left for another day."  859 F. App'x at 742.

United States District Court
Northern District of California

significant question of what position will be offered and whether it is actually equivalent to the plaintiff's previous job—a question that might often go unanswered until more than ninety days after the decision on the merits.  The possibility that a plaintiff has no further recourse if the EEOC finds a significantly inferior position sufficient is at the very least unsatisfying, and perhaps conflicts with the statute's structure of allowing for judicial review.  The concern of some courts that allowing de novo review after an enforcement decision could serve to indefinitely extend the statute of limitations for "stale claim[s]," *see, e.g.*, *Vandesande*, 2009 WL 10699891, at *4, likely overestimates the typical plaintiff's willingness to put their initial victory in jeopardy through de novo review, and regardless might be better addressed by other doctrines like laches, or looking to whether the enforcement petition was frivolous or taken in bad faith.  Here, the Secretary has not argued that Young's enforcement petition was groundless or stemmed from anything other than a good faith dispute as to whether the position she was offered was equivalent.

Some of those decisions are also potentially distinguishable.  In *Laber*, for example, the Fourth Circuit rejected the plaintiff's argument that he was seeking review of the subsequent order on a petition for clarification rather than the earlier final decision on the merits, holding that "the present action does not seek to review the March 10, 2003 decision on the petition for *clarification* but rather for reconsideration of the *merits* and for *additional* remedies."  316 F. App'x at 270.  Similarly, in *Puckett*, the plaintiff took issue with the initial conclusion on the merits that she was not entitled to overtime pay, which she belatedly sought to challenge after the EEOC again declined to require backpay at an overtime rate on an enforcement petition.  342 F. Supp. 2d at 1064.  Here, there is no real question that Young is primarily dissatisfied with the EEOC's 2018 conclusion on her enforcement petition that a particular position offered to her was equivalent to her prior role, and is willing to relitigate the merits of her discrimination claim only because precedent requires her to do so if she wishes to challenge the EEOC's implementation of a remedy.

In *Massingill v. Nicholson*, 496 F.3d 382 (5th Cir. 2007), the Fifth Circuit allowed a de novo review to proceed despite having been filed only after a petition for enforcement.  *See* 496 F.3d at 384.  That case primarily addressed whether the plaintiff actually sought de novo review

United States District Court
Northern District of California

1    rather than improperly attempting to challenge only the remedy. *See id.* at 385–86.  In reaching

2    the conclusion that the complaint could be construed as seeking an allowable de novo review,

3    however, the court noted that "the plaintiff ha[d] ninety days to sue, and she d[id] so within that

4    time." *Id.* at 386.  The *Vandesande* decision distinguished *Massingill* on the basis that "the

5    complaint was only truly final when the damages were fully determined and awarded in 2003 and

6    then affirmed in May 2005." *Vandesande*, 2009 WL 10699891, at *5.  This case in some ways

7    resembles *Massingill*, in that one component of the relief Young would receive on her claims—the

8    particular position to which she would be allowed to return—was not finalized until resolution of

9    her petition for enforcement.

10       *Laber* also relied on the EEOC's identification of its earlier decision as the final decision,

11   with no indication that the subsequent decision on clarification included language indicating that it

12   was a final decision from which the plaintiff could seek judicial review.  316 F. App'x at 269–70.

13   Here, the December 2018 errata specifically stated that the enforcement decision was "the

14   Commission's final decision," and the corrected decision included with that errata instructed

15   Young that "if she wish[ed] to file a civil action, [she] ha[d] the right to file such action in an

16   appropriate United States District Court within ninety (90) calendar days from the date that [she]

17   receive[d] this decision." SAC Ex. 40.

18       The Secretary contends that the "boilerplate" inclusion of right-to-file language in the

19   enforcement decisions, which the Secretary asserts is "not specifically tailored to the posture of

20   the OFO decision in which it appeared,"[6] cannot alter the statutory limitations period set by

21   Congress as a limited waiver of sovereign immunity.  Reply at 10–11.  As noted above, some

22   district courts have accepted that position.  In *Irwin v. Department of Veterans Affairs*, 498 U.S.

23   89 (1990), however, the case on which the Secretary relies for the rule that Title VII's statute of

24   limitations is a waiver of sovereign immunity, the Court held that equitable considerations

25   applicable to suits between private litigants also apply to this statute of limitations.  498 U.S. at

---

27   [6] The Secretary's assertion that this language was included as a matter of course without regard for
28   its accuracy is in some tension with the OFO's decision to issue an errata removing similar
     "boilerplate" language with respect to a right to seek reconsideration, while leaving the language
     regarding judicial review intact.

95–96.[7]  The Secretary cites no binding authority suggesting that either a private or governmental defendant cannot waive a statute of limitations by specifically instructing a plaintiff of their right to seek judicial review.

Regardless of how this Court would decide these question—at least some of which are closer than the Secretary suggests—if presented on a blank slate, the Ninth Circuit has already decided that the EEOC's December 2018 corrected decision was the appropriate starting point for the statute of limitations, based in part on the errata's statement that it was the EEOC's final decision.  That decision is the law of the case.

> The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. *Lockert v. United States Dept. of Labor*, 867 F.2d 513, 518 (9th Cir. 1989). Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir.), *amended*, 860 F.2d 357 (9th Cir. 1988). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).

*Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (alteration in original).

Judge Laporte previously dismissed with prejudice any claim for de novo review that Young might have brought because Young "filed her lawsuit too late," "outside of the 90 day statute of limitations set forth in 42 U.S.C. § 2000e-16."  Order Granting Mot. to Dismiss at 6. Judge Laporte's order does not make clear whether she based that holding on the pre-correction November 2018 enforcement decision or the February 2016 decision denying reconsideration.  On appeal, the Ninth Circuit reversed the denial of leave to because "the EEOC's errata, dated December 14, 2018, stated that the corrected final decision attached thereto was the EEOC's final decision." *Young*, 816 F. App'x at 154.  The Ninth Circuit acknowledged that it was "not

---

[7] Based on the Supreme Court's decisions in *United States v. Wong*, 575 U.S. 402 (2015), and *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), this Court has previously held that Title VII's claims processing requirements do not constitute jurisdictional bars, even when applied to claims against the United States.  *Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019).  The Secretary here stops short of arguing that the statute of limitations is jurisdictional.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    absolutely clear" whether Young could amend her complaint to allege that it was timely, but the

2    only reason the Ninth Circuit identified for that lack of clarity was that "it [was] not clear when

3    Young received the corrected final decision." *Id.*

4         According to the Secretary, the "specific issue decided by the [Ninth Circuit] was whether

5    the operative date of the final decision on Plaintiff's 2018 petition for enforcement was November

6    30, 2018 or December 14, 2018." Reply at 2. To the contrary, the "specific issue" before the

7    Ninth Circuit was whether the Court erred in denying Young leave to amend based on the statute

8    of limitations, which turned on which EEOC order constituted the "notice of final action" for the

9    purpose of § 2000e-16(c). All relevant facts were apparent from the record on the original motion

10   to dismiss, where Young's opposition brief attached all of the EEOC decisions at issue. *See* dkt.

11   20. If the statute of limitations had expired in 2016, the Ninth Circuit could have affirmed

12   dismissal with prejudice, since a party is not entitled to leave to amend to assert a legally futile

13   argument. Alternatively, the Circuit could have remanded with instructions for this Court to

14   consider more clearly in the first instance whether the 2016 reconsideration decision or the 2018

15   enforcement decision marked the start of the statute of limitations. It did not, and its holding that

16   Judge Laporte erred in denying leave to amend necessarily rests on the conclusion that the

17   December 2018 decision was the final decision for the purpose of § 2000e-16. *See Milgard*

18   *Tempering*, 902 F.2d at 715 (explaining that the law of the case doctrine encompasses issues

19   decided "by necessary implication").

20        The Secretary relies on *Hall v. City of Los Angeles* ("*Hall II*"), 697 F.3d 1059 (9th Cir.

21   2012), to argue that treating the 2018 corrected enforcement decision as the start of the statute of

22   limitations is not law of the case because the Ninth Circuit did not specifically consider whether

23   the 2016 decision was the appropriate starting point. In *Hall*, the Ninth Circuit held on a first

24   appeal that the district court erred in applying collateral estoppel to a § 1983 claim under a

25   particular doctrine relating to prosecution based on false evidence, "*Devereaux* prong (2)," and

26   remanded for further proceedings. *Hall v. City of Los Angeles* ("*Hall I*"), No. 07-56853, 2009 WL

27   2020851, at *1 (9th Cir. July 13, 2009). On remand, the district court determined that *Devereaux*

28   prong (2), which typically pertains to coercive interrogations of other witnesses who testified

11

against a plaintiff, did not apply to alleged coercion of the plaintiff himself, and granted summary judgment for the defendants on that basis. *Hall II*, 697 F.3d at 1066. The Ninth Circuit held that the district court's consideration of that issue was not foreclosed by law of the case, because the previous decision on appeal decided only the question of collateral estoppel and "did not then go on to analyze whether *Devereaux* prong (2) applied to Hall's coercive interrogation claim." *Id.* at 1067.

Unlike in this case, nothing in the first *Hall* decision necessarily relied on the proposition that *Deveraux* prong (2) applied to the claim at issue. Here, in contrast, the initial denial of leave to amend was based on the proposition that Young's claim was untimely—for reasons not specifically stated in Judge Laporte's order—while the Ninth Circuit's reversal of that decision was based explicitly on its conclusion that Young could satisfy the statute of limitations if she received the December 2018 decision within ninety days before filing this action. This Court is not free to reconsider that conclusion.

There is no question that this issue was not well presented to the Ninth Circuit. The Ninth Circuit did not explicitly consider whether the 2016 decision was the appropriate starting point because the Secretary did not raise it, instead arguing specifically—and contrary to his current position—that the November 30, 2018 enforcement decision was the "Final Order" from which the ninety-day limitations period began to run, and that both that November decision and the December 2018 correction included "the correct information regarding appeal rights." Answering Br. on Appeal at 28–30, *Young v. Chao*, No. 19-16829, ECF Doc No. 6 (9th Cir. Jan. 16, 2020). The question of whether the December 2018 corrected order was the final decision for the purpose of the statute of limitations was nevertheless necessary to the Ninth Circuit's conclusion that Judge Laporte erred in denying leave to amend, and there is no injustice in holding the Secretary to that conclusion when it stemmed from the Secretary's own framing of the statute of limitations in previous briefing to this Court and the Ninth Circuit.

### C.   Young Need Not Return Funds Before Judgment

As the Secretary notes, one decision from the Southern District of California and a number of out-of-circuit cases have held either that a plaintiff cannot proceed on a claim for de

United States District Court
Northern District of California

1   novo review after accepting monetary relief from an EEOC proceeding, or at least that the plaintiff

2   must return or offer to return those funds before proceeding.  Some of those cases are

3   distinguishable, while others rest on a shaky foundation.

4          The only in-circuit decision, *Thompson v. Donahoe*, cites no Ninth Circuit authority and

5   instead relies primarily on the district court's conclusion that the plaintiff who had accepted

6   monetary relief before filing claim for de novo review was "trying to use the OFO's award as a

7   floor on his damages," which the court considered "repugnant to the requirement that a

8   complainant choose between filing an enforcement action *or* a de novo action for discrimination."

9   *Thompson v. Donahoe*, No. 10-CV-2165 W(RBB), 2013 WL 144271, at *4 (S.D. Cal. Jan. 9,

10   2013).  The *Thompson* court also cited the Eastern District of New York's decision in  *St. John v.*

11   *Potter*, 299 F. Supp. 2d 125, 129 (E.D.N.Y. 2004), and the Eastern District of Virginia's decision

12   in *Legard v. England*, 240 F. Supp. 2d 538, 545 (E.D. Va. 2002).

13          *St. John* is distinguishable.  In that case, the Eastern District of New York relied on the

14   defendant's reasonable expectation that a plaintiff accepting "payment rendered in full satisfaction

15   of a valid order of an administrative agency," "without reserving any rights with regard to either of

16   the checks," would not seek to set aside the agency's decision.  299 F. Supp. 2d at 129.  The court

17   also noted that the plaintiff did not file a brief in opposition to the defendant's motion for

18   summary judgment.  Here, Young has sought to challenge at every turn at least the particular

19   position offered for reinstatement.  When the DOT made its first payments in March and April of

20   2016, Sanchez Decl. (dkt. 69-1) ¶ 10, it had offered her a position for reinstatement and Young

21   had "informed DOT that she accepted the offer as partial implementation of the final EEO

22   decision but requested details regarding the position, her responsibilities, and her supervisor," *id.*

23   ¶ 12, and the DOT was still trying to determine whether it could actually reinstate Young in light

24   of her having accepted a voluntary retirement incentive in the intervening years,[8] *id.* ¶ 13.  At the

25   time the DOT provided additional payments in March and May of 2017, the DOT had offered

26   Young an entirely different position, and Young had rejected that position based on her view that

27

28   [8] On the DOT's petition for clarification, the OFO later determined that Young was entitled to
    reinstatement so long as she returned the incentive payment.  Sanchez Decl. ¶ 14 & Ex. D.

United States District Court
Northern District of California

United States District Court
Northern District of California

it was not equivalent.  *Id.* ¶¶ 15–16.  When the DOT made its final payments after the enforcement action in February and March of 2019, Young had already unsuccessfully requested review of the enforcement decision, signaling her continued dissatisfaction with the outcome.  *Id.* ¶¶ 18–19.  Young filed this action in mid-March of that year.  *See* Compl.  This case is not like *St. John*, where the court found that the plaintiff's conduct indicated that she accepted the outcome of administrative proceedings.

The Eastern District of Virginia's decision in *Legard* rests on an earlier decision by that court, *Miller v. Peters*, which *Legard* characterized as foreclosing review where a plaintiff "accepted some of his administrative relief and seeks review of the remaining portions."  *Legard*, 240 F. Supp. 2d at 546 (citing *Miller v. Peters*, Civ. No. 00-480-A, 2000 U.S. Dist LEXIS 22762 (E.D. Va. June 9, 2000)).  In *Miller*, however, the court did not hold—or at least not clearly—that a plaintiff was required to return any monetary relief before seeking de novo review, but instead that the plaintiff in that case was not actually seeking de novo review and impermissibly sought "review solely of [his] compensatory damage award[]," which Title VII does not permit.  2000 U.S. Dist LEXIS 22762, at *2.  Regardless, *Legard* dismissed for lack of subject matter jurisdiction as a result of the plaintiff's acceptance of monetary relief, a position that the Secretary specifically disclaims in this case.  *See* Reply at 13 ("But Defendant is not taking the position that disgorgement is required by statute or that this Court lacks jurisdiction to consider Plaintiff's *de novo* claim . . . .");  *cf. also Mayfield v. U.S. Dep't of Veterans Affs.*, No. CIV.A.05 2598, 2007 WL 625827, at *3 (E.D. La. Feb. 27, 2007) (citing with approval *Legard*'s jurisdictional holding in the alternative to the court's primary conclusions that the plaintiff had not sought de novo review and had not shown good cause to alter a scheduling order to permit amendment).

In *Clegg v. West*, another Eastern District of Virginia decision, the court noted that the plaintiff impermissibly sought simultaneously to enforce the EEOC's determination and to obtain de novo review that might yield additional damages.  *Clegg v. West*, No. CIV.A. 97-986-A, 1997 WL 1168697, at *5 (E.D. Va. Oct. 20, 1997), *aff'd without opinion*, 199 F.3d 1326 (4th Cir. 1999) (table of decisions).  Looking to the Black's Law Dictionary definition of a de novo proceeding, the court held "that a *de novo* proceeding is what it purports to be, and that plaintiff may not

simultaneously accept part of the benefit of the EEOC order, that is, the back pay he has received and not offered to repay and, at the same time, raise *de novo* his discrimination claim." *Id.* The court cited no other authority for the proposition that a plaintiff cannot retain payments already received while seeking de novo review, and did not rely solely on that issue, instead dismissing based on the internal inconsistency of the plaintiff's complaint, "the fact that plaintiff may not seek further enforcement of the EEOC order because there is conclusive evidence on this record that defendant complied fully with it," and failure to exhaust administrative remedies. *Id.* at *5–6.

Some decisions have held that disgorgement would be required only in the alternative to their primary conclusions that plaintiffs' claims were untimely. *Harley v. Chao*, No. 1:07-CV-1881-RWS-JFK, 2008 WL 11407328, at *12 (N.D. Ga. Jan. 24, 2008), *recommendation adopted*, 2008 WL 11407398 (N.D. Ga. Apr. 3, 2008); *Vandesande*, 2009 WL 10699891, at *6–7; *Kloock*, 2005 WL 1593448, at *2. *Vandesande* relied on caselaw addressing the effect of payment provided in exchange for an explicit release, and noted that the plaintiff in the case at hand had stipulated to damages before seeking de novo review. 2009 WL 10699891, at *3, *6–7 (citing *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 322–23 (5th Cir. 2003)). There is no indication that the parties ever agreed to any resolution of Young's claims here. Both *Vandesande* and *Kloock* also relied on the lack of timeliness of the plaintiff's claims as grounds to enforce repose based on past payments, but as discussed above, the Ninth Circuit has already effectively determined that Young's claim here is timely.

Two published opinions by appellate courts have declined to require a plaintiff to return funds before seeking de novo review, noting the lack of any support for that rule in the statute. The Fifth Circuit addressed the issue as follows:

> Furthermore, we do not think that Massingill must disgorge or offer to disgorge the money she has received so far for her case to proceed. We recognize that, as the district court noted, two district courts [*St. John* and *Legard*] have held otherwise. Indeed, one of those courts [*Legard*] held that the defendant's performance of the injunctive remedy and sending to plaintiff of checks for compensatory damages and attorneys' fees precluded relief, even though plaintiff had returned the former check and offered to return the latter or post a bond for it and the checks were sent after plaintiff had filed suit but before defendant was served. But there is nothing in the statute creating the right of action, 42 U.S.C. § 2000e–16(c), which precludes

United States District Court
Northern District of California

1

suit if the award has been partially or even completely rendered. Defendants might complain that, having rendered an award, they are entitle to repose, but § 2000e-16(c) gives plaintiffs only ninety days after the final agency disposition to sue, and it's not unreasonable to delay such repose for three months. This is not a situation involving the common-law defense of satisfaction of a debt, settlement, or judgment from some time ago, it is situation where the administrative scheme has played out, the plaintiff has ninety days to sue, and she does so within that time. We do not mean to encourage plaintiffs to accept awards and then file suit, but we cannot conclude that Massingill has forfeited her rights under § 2000e-16(c) in the present circumstances.

Of course, the VA here can counterclaim against Massingill for the amounts already paid, obtaining offset against any recovery by Massingill and judgment against Massingill if no liability is found or the offset is greater than the recovery.

*Massingill*, 496 F.3d at 386 (footnote omitted); *see also Smith-Jackson v. Chao*, No. 1:15-cv-1688-WSD, 2017 WL 3575003, at *7 (N.D. Ga. Aug. 18, 2017) (following *Massingill* on this issue).[9]

The D.C. Circuit recently reached the same conclusion:

In this case, Farrar has also expressed no such intent [to return funds]. But so what? Farrar sued under the Rehabilitation Act, which gives employees 90 days from the Commission's decision—without referring to its award—to file a civil action. 42 U.S.C. § 2000e-16(c). The Act says nothing about requiring an employee to first disgorge, or offer to disgorge, an administrative remedy already received. Although Farrar could have returned, or offered to return, his award before filing suit, the statute doesn't require it. And we cannot read that requirement into the statute without rewriting it.

*Farrar v. Nelson*, 2 F.4th 986, 988 (D.C. Cir. 2021).  That court noted that the EEOC specifically ordered the defendant agency to pay the plaintiff before the time to seek de novo review had expired, and had rejected comments in rulemaking seeking a requirement that plaintiffs certify a lack of intent to seek de novo review before ordering payment.  *Id.* at 989.  As in *Massingill*, the

---

[9] One district court decision explicitly declined to follow *Massingill*, holding instead that a plaintiff's acceptance of funds from administrative proceedings barred her claim, and dismissing for lack of subject matter jurisdiciton.  *Jones v. Rogers*, No. 15-10222-CIV, 2017 WL 6397353, at *3 (S.D. Fla. June 29, 2017), *recommendation adopted*, 2017 WL 6395664 (S.D. Fla. Aug. 14, 2017).  The Eleventh Circuit vacated that dismissal and remanded in an unpublished decision, holding that it "need not decide whether Jones' return of the EEOC award to the NSA is a precondition to Jones' entitlement to her de novo trial" because she had in fact agreed to return the funds, and noting that "[w]hether or not that might be a precondition, it is certainly not a matter of the subject matter jurisdiction of the district court."  *Jones v. Sec'y, Dep't of Def.*, 730 F. App'x 885, 886 & n.1 (11th Cir. 2018) (per curiam).

United States District Court
Northern District of California

D.C. Circuit noted that the plaintiff ultimately "risked losing his previously-awarded damages when he filed his civil action," as the defendant "could file a counterclaim to recover the administrative award." *Id.*

The Secretary contends that even though Young made clear her dissatisfaction with the reinstatement position offered, the DOT was nevertheless entitled to rely on her acceptance of monetary payments as disclaiming any intent to seek de novo review of the decision as a whole. Reply at 14. Along the same lines, the Secretary seeks to distinguish cases where appellate courts held that plaintiffs could proceed despite accepting payments because those courts held that agencies could not reasonably expect repose when they made payments before the time to seek de novo review had expired, while in the Secretary's view, that period expired years before Young sought review here. *Id.* at 13–14. As discussed above, the Ninth Circuit held to the contrary with respect to the statute of limitations. Regardless, it is difficult to believe that the DOT actually believed the matter was settled and beyond further review when the Secretary specifically argued to this Court and the Ninth Circuit that that statute of limitations for de novo review began with the EEOC's November 2018 enforcement decision. *See* 1st. Mot. to Dismiss (dkt. 15) at 10[10]; Answering Br. on Appeal at 28–30. Moreover, there is no indication that the DOT would have behaved any differently had it known Young intended to pursue de novo review if her concerns regarding reinstatement were not addressed to her satisfaction.

In this Court's view, the circuit decisions *Massingill* and *Farrar* have the better of this question. The claims at issue are governed by a comprehensive statutory and regulatory scheme, no part of which requires a plaintiff to return funds received in administrative proceedings before seeking de novo judicial review. A court "cannot read that requirement into the statute without rewriting it." *Farrar*, 2 F.4th at 988. While the Secretary is correct that those decisions did not foreclose the possibility that equitable considerations or defenses might require repayment in some

---

[10] "On November 30, 2018, the OFO issued its Final Order. The Final Order, which is referenced throughout and attached to Plaintiff's complaint with the Errata, clearly set forth the 90-day period in which Plaintiff had to file suit. The certificate of mailing shows the Final Order was mailed to Plaintiff on November 30, 2018. The limitations period began when the Final Order arrived at Plaintiff's address of record." 1st Mot. to Dismiss at 10 (cleaned up).

United States District Court
Northern District of California

circumstances, the Secretary's equitable arguments rest almost entirely on the district court authority that *Massingill* and *Farrar* rejected,[11] or that were based on distinguishable facts where a plaintiff either failed to present a de novo challenge or more clearly accepted the results of administrative proceedings.

Notwithstanding whatever claim the Secretary might have to Young's administrative award if Young fails to prevail in this action, this Court follows *Massingill* and *Farrar* in holding that Young's continued possession of those funds is not grounds for dismissal of her claim for de novo review.

### D.    Other Avenues to Secure Funds Pending Resolution of This Case

At the hearing on this motion, the Court requested supplemental briefing as to whether—even if not required by the nature of her claim—"the Court has authority to order Ms. Young to place funds in escrow or post a bond pending resolution of de novo review."  Civil Minute Order (dkt. 75).  In his supplemental brief, the Secretary contends that basic principles of restitution call for a return of funds previously paid to Young "[b]ecause the money paid to Plaintiff was made pursuant to an administrative disposition that is now a legal nullity by reason of Plaintiff's *de novo* action."  Def.'s Supp'l Br. at 1–3.  But as Young notes in her response, the Secretary cites no authority for the proposition that the administrative disposition is already a nullity, in the same manner as a judgment that has been vacated on appeal, merely by virtue of Young filing this action and before any determination here as to whether the decision was correct.

The Secretary also argues that the Court has equitable authority to order funds placed in escrow pending resolution of the case, relying primarily on *United States v. Cal-Almond, Inc.*, 102 F.3d 999 (9th Cir. 1996).  In that case, "Cal-Almond mistakenly paid the Almond Board all back-due advertising and promotion assessments for the 1992–93 and 1993–94 seasons" despite its belief that those assessments were unconstitutional, a question that Cal-Almond was actively litigating in administrative proceedings at the time, where it had received an initial favorable ruling that was then on administrative appeal.  102 F. 3d at 1002.  In an enforcement action

---

[11] *See Farrar*, 2 F.4th at 988 (disagreeing with the conclusions of *St. John* and *Legard*); *Massingill*, 496 F.3d at 386 & n.14 (same).

United States District Court
Northern District of California

United States District Court
Northern District of California

brought by the United States in a district court while the administrative proceedings were still pending, "Cal-Almond moved for return of the money," and the district court ordered the funds placed in escrow. *Id.* The Ninth Circuit affirmed, treating the escrow order as a component of the district court's decision to exercise inherent authority to stay the United States' enforcement action, which was justified by "unusual" circumstances including unreasonable delay in adjudicating the administrative proceedings and potential bad faith by the United States, as well as its failure to pay a previous judgment in related litigation. *Id.* at 1003–05.

This case does not contain the unusual factors of *Cal-Almond*. The Secretary has offered no evidence of bad faith, unreasonable delay, or failure to meet legal obligations on Young's part. The Secretary is nevertheless likely correct that the inherent power recognized in that case includes authority to order funds placed in escrow if the Secretary has a colorable claim to them and is likely to face difficulty collecting if successful. Such authority is also available in at least some circumstances under California law through a writ of possession or attachment, with that law incorporated here by Rule 64 of the Federal Rules of Civil Procedure, which provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64; *see* Cal. Civ. Proc. Code § 512.010 (writ of possession); Cal. Civ. Proc. Code § 485.210 (writ of attachment).

Any such preliminary relief, however, would depend on the Secretary actually asserting a claim to the funds at issue. Both *Massingill* and *Farrar*—the only published appellate decisions addressing the question of whether a plaintiff under similar circumstances must returns funds obtained through administrative proceedings—contemplated that the government must bring a counterclaim to reclaim such funds. *See Massingill*, 496 F.3d at 386–87 ("Of course, the VA here can counterclaim against Massingill for the amounts already paid, obtaining offset against any recovery by Massingill and judgment against Massingill if no liability is found or the offset is greater than the recovery."); *Farrar*, 2 F.4th at 989 ("The district court may find no liability on his claim, and NASA could file a counterclaim to recover the administrative award, although we express no opinion on its propriety or timeliness."). The Secretary has not asserted any

counterclaim here.  *See generally* Answer (dkt. 58).  The Court agrees with *Massingill* and *Farrar* that the Secretary cannot recover funds at issue without affirmatively bringing a claim for them. In the absence of any counterclaim, it is premature to consider whether to grant preliminary relief to secure the funds that might be recoverable through such a counterclaim.  The Court therefore declines to order such relief at this time.

## IV.    CONCLUSION

For the reasons discussed above, the Secretary's motion is DENIED.  If she chooses to proceed here, Young faces a risk that she might be required to repay the substantial funds[12] that she received in administrative proceedings.  But that is her decision to make, and she is not required to repay those funds as a condition of bringing her claim.  In the event that the Secretary brings a counterclaim for restitution, he may have a strong argument for requiring Young to place funds in escrow, particularly given the difficulties of collecting a potential judgment that Young might only be able to satisfy through the sale of her home, as she represented at the hearing.  To date, however, no such counterclaim has been filed, and any question of whether the funds should be placed in escrow is not a basis for summary judgment on Young's claims against the Secretary—the only motion currently before the Court.

If the Secretary wishes to pursue any counterclaim and a request for preliminary relief to secure the funds at issue, he must file his counterclaim no later than February 11, 2022, and Young shall answer or move to dismiss the counterclaim no later than March 4, 2022.  The Secretary may move for requiring funds to be placed in escrow or the posting of a bond no sooner than Young files an answer to the counterclaim,[13] and no later than fourteen days thereafter. Young is cautioned that depending on the outcome of any such counterclaim and the court's

---

[12] The parties' supplemental briefing indicates a significant disagreement as to the amount of the funds at issue, the basis for which is not clear on the current record.  The parties are ORDERED to meet and confer to attempt to resolve at least the question of how much money was awarded in administrative proceedings, with the intent that even if they cannot reach a resolution, each side will be better equipped to defend their view and address their opponent's position if the Court is required to resolve this disagreement.

[13] To be clear, if Young moves to dismiss the counterclaim in lieu of filing an answer, she would not be required to answer unless and until her motion is denied, and the Secretary shall not file a motion to place funds in escrow or for similar preliminary relief until after Young files her answer.

United States District Court
Northern District of California

1   decision on whether repayment is required, one possible result in this case is that Young would be

2   ordered to return all of the money paid to her pursuant to the administrative proceedings.

3        **IT IS SO ORDERED.**

4   Dated: January 25, 2022

5   _____

6   JOSEPH C. SPERO
    Chief Magistrate Judge